CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

July 8, 2013

LETTER TO COUNSEL:

    RE:    *Dennis Bedwell v. Commissioner, Social Security Administration*; \
            Civil No. SAG-12-1724

Dear Counsel:

      On June 11, 2012, the Plaintiff, Dennis Bedwell, petitioned this Court to review the Social Security Administration's final decision to deny his claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). [ECF No. 1]. I have considered the parties' cross-motions for summary judgment, Mr. Bedwell's reply, and the Commissioner's surreply. [ECF Nos. 14, 15, 16, 17]. I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds). Under that standard, I will grant the Commissioner's motion and deny the Plaintiff's motion. This letter explains my rationale.

      Mr. Bedwell filed his claims for benefits on February 7, 2007, alleging disability beginning on January 2, 2002. (Tr. 127-29, 544-50). His claims were denied initially on March 30, 2007, and on reconsideration on February 26, 2008. (Tr. 62-66, 69-70). A hearing was held before an Administrative Law Judge ("ALJ") on March 17, 2009. (Tr. 555-96). After the hearing, on July 13, 2009, the ALJ determined that Mr. Bedwell was not disabled during the relevant time frame. (Tr. 33-50). Following Mr. Bedwell's request for review, the Appeals Council vacated and remanded the ALJ's decision with instructions to give further consideration to Mr. Bedwell's substantial gainful activities and residual functional capacity ("RFC"), and to obtain evidence from a vocational expert ("VE") at step five, if necessary. (Tr. 56-60). Mr. Bedwell appeared before the same ALJ for a second time on October 20, 2011. (Tr. 597-633). The ALJ again denied Mr. Bedwell's claims for DIB and SSI on November 23, 2011. (Tr. 15-27). Because the Appeals Council then denied Mr. Bedwell's request for review (Tr. 5-7), the ALJ's 2011 decision constitutes the final, reviewable decision of the agency.

      The ALJ found that Mr. Bedwell suffered from the severe impairments of degenerative disc disease, depression, and trigeminal neuralgia. (Tr. 17). Despite these impairments, the ALJ determined that Mr. Bedwell retained the RFC to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except simple, routine, unskilled jobs, which are SVP 1 or 2 in nature, able to attend to tasks and complete schedules, low stress in nature, low concentration, and low memory, one or two step tasks, no production rate pace work, little or no decision making, changes in work setting, or judgment required, and allowing him to deal with things rather than people, little interaction with the public, co-workers, or supervisors, stand for 20 or 30 minutes and sit for 20 [to] 30 minutes consistently on an alternate basis, eight hours a day, five days a week, and avoiding heights, hazardous machinery, temperature and humidity extremes, and stair climbing and rope like devices, and no prolonged climbing, balancing or stooping, no more than once or twice an hour, and jobs not requiring good visual acuity due to his eye sight, can determine differences in shape and color of small objects, such as screws and nuts and bolts, is moderately limited with his ability to perform activities of daily living, interact socially, and maintain his concentration, persistence, and pace, due to his pain and depression.

(Tr. 21). After considering the testimony of a VE, the ALJ determined that Mr. Bedwell could perform work existing in significant numbers in the national economy, and that he was therefore not disabled during the relevant time frame. (Tr. 25-26).

Mr. Bedwell presents four arguments on appeal, that the ALJ: (1) erroneously classified his hepatitis C, sleep apnea, and obesity as non-severe; (2) erred at step three of the sequential evaluation process by failing to identify and analyze Listing 1.04; (3) erred in evaluating his mental impairments; and (4) did not comply with the remand order issued by the Appeals Council. Each argument lacks merit.

First, Mr. Bedwell alleges that the ALJ erred at step two in failing to classify his hepatitis C, sleep apnea, and obesity as severe impairments. Pl. Mot. 12-16. The claimant need only make a threshold showing at step two that an "impairment or combination of impairments . . . significantly limits [his or her] physical or mental ability to do basic work activities" for the ALJ to move onto the subsequent steps in the five-step sequential evaluation process. *See* 20 C.F.R. § 416.920(c). The claimant bears the burden of proving that her impairment is severe. *Johnson v. Astrue*, Civil Action No. PWG-10-3139, 2012 WL 203397, at *2 (D. Md. Jan. 23, 2012) (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)). The ALJ held that there was "minimal clinical evidence to support any finding of significant vocational impact related to [Mr. Bedwell's hepatitis and sleep apnea]." (Tr. 18). In support, the ALJ cited notes from Mr. Bedwell's treating physician, Dr. Jui-Chih Hsu, which included no mention of functional limitations resulting from Mr. Bedwell's hepatitis C or sleep apnea, and only occasional references to fatigue. (Tr. 229-68, 359-85). Moreover, the results of Mr. Bedwell's sleep study diagnosed his sleep apnea only as "moderate." (Tr. 218-20). A mere diagnosis of an ailment, without a conjunctional showing of limitation of work capacity, does not automatically qualify an individual for disability benefits. *See Felton-Miller v. Astrue*, 459 F. App'x 226, 229-30 (4th Cir. 2011) (quoting in part *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("However, medical conditions alone do not entitle a claimant to disability benefits; 'there must be a showing

of related functional loss.'")).

In response to the Commissioner's motion for summary judgment, Mr. Bedwell asserts that the Commissioner misconstrues the treatment evidence from Dr. Hsu by referring to notes which "appear[] to have been copied and pasted from appointment to appointment" and which do "not adequately reflect the actual observations of Dr. Hsu[.]" Pl. Resp. 1-3. This hypothesis is incredibly speculative. Dr. Hsu appears to have generally noted changes in Mr. Bedwell's condition in all capital letters, and findings and observations that were unchanged from previous appointments or within normal limits in normal sentence style capitalization. *Compare, e.g.,* (Tr. 254) ("GENERAL: Normal activity level and energy level" in November 2006) *with* (Tr. 257) ("GENERAL: DECREASED ENERGY LEVEL, FEELS FATIGUED" in October 2006). It does not follow that notes with regular capitalization should be excluded from consideration because they do not adequately reflect Dr. Hsu's observations.

Similarly, Mr. Bedwell's argument that the ALJ erroneously classified his obesity as non-severe is also unpersuasive. Pursuant to Social Security Ruling ("SSR") 02-1p, obesity is a severe impairment "when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." The ALJ assessed Mr. Bedwell's obesity and noted that "no specific functional limitations are attributed" to his weight. (Tr. 18). Mr. Bedwell points to a recommendation following his sleep study that he would benefit from weight loss, (Tr. 219), but cites no other evidence demonstrating that his obesity significantly limits his ability to perform at work. Mr. Bedwell has not met his burden of proving obesity to be a severe impairment.

Second, Mr. Bedwell argues that the ALJ failed to explain why his degenerative disc disease and trigeminal neuralgia did not meet the criteria for listing 1.04.[1] Pl. Mot. 16. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). The claimant bears the burden of demonstrating that his impairment meets or equals a listed impairment. *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986). An ALJ is required to discuss listed impairments and compare them individually to listing criteria *only when* there is "ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md. 1999) (emphasis added). Here, there is insufficient evidence to support this requirement. The medical evidence of record shows that the pains Mr. Bedwell experiences from his trigeminal neuralgia and degenerative disc disease are managed effectively by medication. (Tr. 468-522) (showing that while Mr. Bedwell reported that he hurts "all over" during an early visit, he subsequently

---

[1] Listing 1.04 outlines criteria for severe musculoskeletal impairments, and defines a musculoskeletal impairment, or the pain resulting from such an impairment, as causing loss of function when it renders a claimant unable to ambulate effectively on a sustained basis or unable to perform fine and gross movements effectively on a sustained basis for any reason. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

reported that his pain medications were working "o.k.[,]" "great[,]" "well[,]" and "very well").

Moreover, although the ALJ did not address Mr. Bedwell's physical impairments in step three, the ALJ's RFC assessment provided a thorough analysis of Mr. Bedwell's functional capacity related to his degenerative disc disease and trigeminal neuralgia, and explained why they were not so severe as to warrant a finding of disability. (Tr. 23-24). For example, the ALJ noted that Mr. Bedwell was "seen for back and shoulder pain in February 2011 to October 2011 by Dr. Rehan Khan," but also concluded, after an extensive discussion of Dr. Khan's findings, that "Dr. Khan specified no functional limitations or restrictions." (Tr. 23). The ALJ's ultimate conclusion that Mr. Bedwell's physical impairments and the pain resulting therefrom do not affect his ability to ambulate properly is based on substantial evidence. Mr. Bedwell's treatment records objectively demonstrate that despite his functional ailments, he retains the RFC to do some work and does not meet the listing criteria.[2] (Tr. 210, 231-68, 309-10, 359-85, 412-13, 467-522).

Next, Mr. Bedwell argues that the ALJ improperly evaluated his mental health impairment by selectively incorporating the more moderate aspects of his psychological assessments to erroneously conclude that Mr. Bedwell retained a non-exertional RFC to perform work. Pl. Mot. 20-27. On prior remand, the ALJ was instructed to conduct a more in-depth evaluation of the opinion of Dr. Raju, Mr. Bedwell's treating psychiatrist, with respect to Mr. Bedwell's mental impairments and his RFC. (Tr. 56-57). When evaluating a claimant's mental impairments, the ALJ must follow a special technique outlined in 20 C.F.R. § 404.1520a(b) at each level in the administrative review process. The ALJ must document application of this technique in his decision. 20 C.F.R. § 404.1520a(e). The ALJ must first evaluate the claimant's "pertinent symptoms, signs, and laboratory findings" to determine whether a medically determinable mental impairment exists. 20 C.F.R. § 404.1520a(b)(1). If a medically determinable mental impairment exists, the ALJ must rate the degree of functional limitation. 20 C.F.R. § 404.1520a(b)(2). To rate the degree of functional limitation, the ALJ must consider "all relevant and available clinical signs and laboratory findings, the effects of [the claimant's] symptoms, and how [the claimant's] functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment." 20 C.F.R. § 404.1520a(c)(1). The ALJ must make findings as to the degree of restrictions, if any, in four areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.[3] 20 C.F.R. § 404.1520a(c)(3).

---

[2] In his response to the Commissioner's motion for summary judgment, Mr. Bedwell again makes the argument that in assessing whether the ALJ properly analyzed Listing 1.04, I should ignore all of the Dr. Hsu's notes that indicate Mr. Bedwell's musculoskeletal examinations were normal because they are in sentence style case and do "not reflect actual treatment notes[.]" Pl. Resp. 4-5. As discussed above, his argument is without merit.

[3] Episodes of decompensation are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4).

Mr. Bedwell's support for his assertion is baseless in the record. According to Mr. Bedwell, the ALJ's description of his mental functional capacity was an "erroneous summary" of his physicians' findings, and was not supported by substantial evidence. In fact, the ALJ engaged in a thorough analysis of the findings of Mr. Bedwell's mental health treatment records, and spent several paragraphs analyzing Dr. Raju's findings, as required by the remand order. (Tr. 19-20). In the aggregate, all of the treatment records reviewed by the ALJ indicate that Mr. Bedwell's impairments do not create a marked or severe functional limitation. (Tr. 19-21). Further, as noted by the ALJ, Dr. Raju did not opine that Mr. Bedwell had marked limitations in any two of the four broad functional limitations as required by Listing 12.04. (Tr. 401-07). Dr. Raju checked off a minority of sub-areas, such as maintaining personal hygiene and displaying awareness of others' feelings, in which he believed Mr. Bedwell had a marked or extreme difficulty.[4] *Id.* Nowhere does he opine that Mr. Bedwell has marked limitations in his overall activities of daily living; social functioning; or concentration, persistence, or pace and he denies that Mr. Bedwell had any episodes of decompensation. *Id.* The ALJ devoted a considerable amount of his opinion to Mr. Bedwell's mental health treatment records, including those from treating healthcare providers, which all corroborated an assessment that Mr. Bedwell's mental impairments did not completely negate his ability to perform light, unskilled work. (Tr. 19-21, 201-07, 277-84, 285-88, 289-301, 339-58, 387-94, 395-98, 401-07, 435-40). Moreover, the ALJ's specific and restrictive RFC determination serves to demonstrate that the ALJ took into account the limitations noted in Mr. Bedwell's treatment records, including those listed by Dr. Raju. (Tr. 24). The ALJ's explanations were sufficiently clear to show that conclusions were well supported by the evidence of record, and as such, the ALJ's decision does not warrant remand.

Finally, Mr. Bedwell argues that the ALJ failed to adhere to the remand order issued by the AC. Pl. Mot. 30-31. His argument is without merit. While the AC remand order stated that the ALJ "may request the treating sources provide additional evidence and/or further clarification of the opinions and medical source statements[,]" (Tr. 59), such action was not required. The ALJ discussed in detail Dr. Raju's opinion and findings. (Tr. 19-20). As discussed above, Dr. Raju did not opine that Mr. Bedwell was disabled from working and did not offer support for the limitations he suggested that Mr. Bedwell had. As such, I can find no reason for remand on the basis that the ALJ did not specifically articulate the weight assigned to Dr. Raju's unsupported opinion. Moreover, the AC declined review of the ALJ's 2011 decision, suggesting that its concerns with the earlier decision had been remedied.

For the reasons set forth herein, Plaintiff's motion for summary judgment [ECF No. 14] will be DENIED and the Commissioner's motion for summary judgment [ECF No. 15] will be GRANTED. The Clerk is directed to CLOSE this case.

---

[4] Of note, Dr. Raju answered "no" to question 15, which asks if he performed any mental status examinations or psychological tests of intelligence and memory. (Tr. 405).

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge